UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL INSURANCE COMPANY,

    Plaintiff,

vs.                                              Case No. 8:09-CV-607-T-27MAP

LAZZARA YACHTS OF NORTH
AMERICA, INC., et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are motions to dismiss filed by Defendants Lazzara Yacht Corporation and Lazzara International Yacht Sales, Inc. (Dkt. 35), Flagship Fire, Inc. (Dkt. 37), and Sea Fire Marine (Dkt. 39). Federal responded in opposition to the motions (Dkts. 41, 42, 43). Upon consideration, the motions to dismiss filed by Lazzara Yacht Corporation and Lazzara International Yacht Sales (Dkt. 35) and Sea Fire Marine (Dkt. 39) are GRANTED *in part* and DENIED *in part*. Flagship Fire's motion to dismiss (Dkt. 37) is GRANTED.

*Background*

In April 2006, a fire broke out in the engine room of the GOLDEN LADY, a 68' motor yacht which was owned by John Venable, Federal Insurance Company's insured. The vessel's FM-200 marine fire suppression system failed to activate properly, and the captain was unable to extinguish the fire manually. Ultimately, the vessel sustained significant damage to the engines, cabin, aft deck, hull sides, structure element, electrical systems and mechanical systems, requiring approximately $600,000 in repairs. No personal property was damaged other than the vessel.

Federal paid to repair the yacht pursuant to its insurance contract with Venable. Subrogated

1

to the rights of its insured, Federal filed this products liability and breach of warranty action against Lazzara Yacht Corporation, the manufacturer of the yacht, Lazzara International Yacht Sales, Inc., which sold the yacht, Sea Fire Marine, the fire suppression system's manufacturer, and Flagship Fire, Inc., which installed the fire suppression system. Defendants moved to dismiss, arguing that the economic loss rule bars Federal's products liability claims. Defendants also contend that Federal failed to state causes of action under state law or the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq.*, for breach of any express or implied warranties.

*Standard*

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, a conclusory statement of the elements to a cause of action will not suffice. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). The complaint must allege sufficient facts which, when taken as true, "state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

*Analysis*

A.   Jurisdiction

Federal admiralty jurisdiction arises where (1) a tort occurs on navigable waters and (2) the tort is connected with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,

2

513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995). The fire suppression system is alleged to have caused injury to the vessel while on navigable waters, therefore satisfying the location requirement. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 863-64, 106 S. Ct. 2295, 2298, 90 L. Ed. 2d 865 (1986); *Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1545-47 (11th Cir. 1994). As for the connection requirement, the incident must have "a potentially disruptive impact on maritime commerce," and "the general character of the activity giving rise to the incident [must] show[] a substantial relationship to traditional maritime activity." *Jerome B. Grubart*, 513 U.S. at 534, 115 S. Ct. at 1048 (internal quotation marks omitted). The first connection requirement is satisfied, as the fire could have spread to nearby commercial vessels or caused the yacht to sink, posing a hazard for commercial navigation. *See Sisson v. Ruby*, 497 U.S. 358, 362-63, 110 S. Ct. 2892, 2896, 111 L. Ed. 2d 292 (1990). The second connection requirement is satisfied because the fire broke out while the yacht was navigating on navigable waters, a traditional maritime activity. *See Mink*, 29 F.3d at 1546. Notwithstanding that the design, manufacturing, and installation of the fire suppression system occurred on land, "[t]he defect could not have manifested itself, and the injury could not have occurred until the vessel was actually operated as a vessel in navigation." *Id.* Federal's strict liability and negligence claims therefore fall within federal admiralty jurisdiction.[1] *See Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 876-77, 117 S. Ct. 1783, 1785, 138 L. Ed. 2d 76 (1997) (exercising admiralty jurisdiction over products liability action which alleged that defective design caused engine room fire).

B.  *Products liability claims*

Federal's products liability claims arise under admiralty jurisdiction and are therefore

---

[1] Federal's warranty-based claims are outside federal admiralty jurisdiction, *East River*, 476 U.S. at 872 n.7, 106 S. Ct. at 2303 n.7, but are subject to supplemental jurisdiction as well as diversity jurisdiction.

3

governed by substantive admiralty law. *See East River*, 476 U.S. at 864, 106 S. Ct. at 2298-99. Admiralty law recognizes products liability principles, including claims in strict liability and negligence. *Id.* at 865, 106 S. Ct. at 2299. Defendants contend that Federal's tort claims only seek recovery for damage to the product itself and are therefore barred by the economic loss rule.[2] Hence, Defendants argue that Federal's action should be limited to its claims for breach of warranty.

In *East River*, the Supreme Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S. Ct. at 2302. "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.* Accordingly, although "damage to a product itself has certain attributes of a products-liability claim," "the injury suffered-the failure of the product to function properly-is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.* at 867-68, 106 S. Ct. at 2300.

Federal suggests that *East River*'s economic loss rule does not apply because Venable purchased the yacht in a consumer transaction. Although *East River* arose in a commercial setting, "[m]ost courts that have considered the issue have held that *East River* applies in the consumer context." *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 701 (D. Md. 2008) (collecting cases); *see Marshall v. Wellcraft Marine, Inc.*, 103 F. Supp. 2d 1099, 1109 (S.D. Ind. 1999) (collecting cases); *Sbarbaro v. Yacht Sales Int'l, Inc.*, No. 94-1062-CIV, 1995 U.S. Dist. LEXIS 22437, at *16-21 (S.D. Fla. Oct. 10, 1995); *Somerset Marine, Inc. v. Forespar Prods. Corp.*,

---

[2] The economic loss rule is applicable, notwithstanding that failure of the fire suppression system caused damage to the engines, hull, cabin, and other areas of the vessel. For purposes of the economic loss rule, the vessel placed in the stream of commerce by the manufacturer and distributors constitutes the "product," not particular component parts which were incorporated in the vessel before its sale to the consumer. *Saratoga Fishing*, 520 U.S. at 883-84, 117 S. Ct. at 1788. On the other hand, personal property which the consumer adds after purchasing the vessel does not constitute the product itself. *Id.* at 884-85, 117 S. Ct. at 1788-89. Federal has not alleged damage to any property other than the vessel.

4

876 F. Supp. 1114, 1116 (C.D. Cal. 1994); *Stanton v. Bayliner Marine Corp.*, 123 Wash. 2d 64, 79-80, 866 P.2d 15, 23-24 (1993); *Karshan v. Mattituck Inlet Marina & Shipyard, Inc.*, 785 F. Supp. 363, 365-66 (E.D.N.Y. 1992); *Sisson v. Hatteras Yachts, Inc.*, No. 87 C 0652, 1991 WL 47543, at *2 (N.D. Ill. April 2, 1991); *but see Miller v. Marina One, Inc.*, No. 06-60908-CIV, 2007 WL 2712497, at *2 (S.D. Fla. Sept. 17, 2007) (declining to apply economic loss rule where other personal property of consumer was damaged and parties were not in commercial relationship); *Insurance Co. of N. Am. v. American Marine Holdings, Inc.*, No. 5:04-cv-86-OC-10GRJ, 2005 WL 3158049, at *10 (M.D. Fla. Nov. 28, 2005) (same); *Farley v. Magnum Marine Corp., N.V.*, No. 89-0725-CV, 1995 WL 795711, at *2 (S.D. Fla. June 9, 1995) (same).

The cases applying *East River* to consumer transactions generally rely on the Supreme Court's "overriding concern with keeping contract and product liability law separate." *E.g., Ace*, 587 F. Supp. 2d at 701. An action for damage to the product itself "is most naturally understood as a warranty claim," not a claim sounding in tort, regardless of whether the product was used commercially or by a consumer. *See East River*, 476 U.S. at 872, 106 S. Ct. at 2302.

Federal objects that a downstream consumer is not in privity with the manufacturer and therefore is not in a position to negotiate a warranty. However, the plaintiffs in *East River* were charterers who lacked privity with the defendant manufacturer. *Sisson*, 1991 WL 47543, at *2 (citing *East River*, 476 U.S. at 875, 106 S. Ct. at 2304). Nonetheless, the Supreme Court found that "[p]ermitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums." *East River*, 476 U.S. at 874, 106 S. Ct. at 2304. "It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." *Id.* Accordingly, "[a] manufacturer's expectation of, and entitlement to, the protection of *East River* should not, and cannot, turn on the purpose a downstream purchaser, with

5

which the manufacturer had no dealings, had in purchasing the vessel." *Stanton*, 866 P.2d at 23 (quotation omitted). The absence of privity between the consumer and manufacturer is therefore no bar to the economic loss rule.[3] *E.g., Sisson*, 1991 WL 47543, at *2.

Federal argues that application of the economic loss rule would leave it without a suitable remedy because Defendants disclaimed or limited certain warranties. This likewise raises no bar to the economic loss rule. *See East River*, 476 U.S. at 875, 106 S. Ct. at 2304 (applying economic loss rule notwithstanding that "[a]ny warranty claims would be subject to [defendant's] limitation, both in time and scope, of its warranty liability," and that "charterers could not have asserted the warranty claims"). Courts extending *East River* to consumer transactions have noted that consumer purchasers of recreational vessels tend to be sophisticated and capable of negotiating terms of a purchase agreement. *E.g., Ace*, 587 F. Supp. 2d at 701-02; *Somerset*, 876 F. Supp. at 1115. And the absence of a suitable warranty can be factored into the purchase price. *See Ace*, 587 F. Supp. 2d at 702; *Marshall*, 103 F. Supp. 2d at 1109 n.6; *but see Farley*, 1995 WL 795711, at *2 (expressing concern that downstream consumers may not be able to negotiate for warranties). In the absence of personal injury or damage to other property, there is no reason to upset the parties' bargain as to their contractual responsibilities and corresponding purchase price. *See East River*, 476 U.S. at 872, 106 S. Ct. at 2302 ("Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.").

---

[3] Likewise, the absence of privity between the vessel's owner and Flagship Fire, which installed the FM-200, does not preclude application of the economic loss rule. As discussed, the product itself, for purposes of the economic loss rule, is the entire vessel which was placed in the stream of commerce. *Saratoga Fishing*, 520 U.S. at 883-84, 117 S. Ct. at 1788. A party which manufactured or installed an individual component part receives no less protection from *East River* than the primary manufacturer. *Cf. id.* at 884, 117 S. Ct. at 1788 (noting "manufacturers and component suppliers can allocate through contract potential liability for a manufactured product that does not work, thereby ensuring that component suppliers have appropriate incentives to prevent component defects that might destroy the product").

Moreover, *East River* focused on the availability of insurance to cover losses which occur when the product injures itself. *Id.* at 871, 106 S. Ct. at 2302. Courts applying the economic loss rule in the consumer context have found that recreational vessels, like commercial vessels, are generally insured. *E.g.*, *Ace*, 587 F. Supp. 2d at 702; *Karshan*, 785 F. Supp at 366. Indeed, Federal is pursing this action as subrogee.

Federal relies on *Miller, American Marine Holdings*, and *Farley*. The weight of authority, however, holds that *East River*'s economic loss rule applies in the consumer context. A departure from the majority rule is unwarranted. The economic loss rule bars Federal's claims for strict liability in Count X and negligence in Counts XI, XII, and XIII. This action is therefore properly reduced to Federal's express warranty claims against Lazzara Yacht Corporation and Sea Fire and its implied warranty claims against Lazzara Yacht Corporation and Lazzara International Yacht Sales.

C. *Warranty claims*

As a general principle, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *East River*, 476 U.S. at 864, 106 S. Ct. at 2298-99. "However, a contract for the sale or construction of a ship is not within the federal courts' admiralty jurisdiction." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009). Likewise, warranty claims grounded in contracts for the construction or sale of a vessel are outside admiralty jurisdiction. *East River*, 476 U.S. at 872 n.7, 106 S. Ct. at 2303 n.7. Accordingly, notwithstanding that federal jurisdiction lies in admiralty, Florida law applies to Federal's breach of warranty claims. *See Cooper*, 575 F.3d at 1166 (in admiralty action, applying state law to claims related to contract for construction and sale of vessel).

1. *Breach of Lazzara Yacht Corporation's express warranty*

Federal contends that improper installation of the fire suppression system constituted a breach of Lazzara Yacht Corporation's written warranty, entitling it to damages under Florida law and the

Magnuson Moss Warranty Act. Lazzara Yacht Corporation argues that it was not provided with notice of the breach and therefore Federal cannot state a cause of action for breach of warranty under Florida law. Lazzara Yacht Corporation further argues that Federal's Magnuson Moss claim is subject to dismissal because it was not provided with a reasonable opportunity to cure any alleged breach of its warranty obligations.

Pursuant to Florida's Uniform Commercial Code, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *see Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977) (breach of warranty claim requires "notice to seller of breach").[4] A "seller" is "a person who sells or contracts to sell goods." Fla. Stat. § 672.103(1)(d). The plain language of the statute therefore does not require notice to a manufacturer, such as Lazzara Yacht Corporation.

The parties have not cited to any Florida case extending section 672.607(3)(a)'s notice requirements to a manufacturer. Federal relies on *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736 (Colo. 1991). In *Cooley*, the Colorado Supreme Court held that an identical provision of Colorado's Uniform Commercial Code did not require the buyer to provide a "remote manufacturer" with notice of a product defect. 813 P.2d at 742.[5] *Cooley* noted, however, that notice to the manufacturer has been required where the evidence demonstrates that the manufacturer was not

---

[4] Florida's UCC applies to Federal's warranty claims. *See East River*, 476 U.S. at 872 n.7, 106 S. Ct. at 2303 n.7 (noting UCC would apply to warranty claims related to defective turbine installed in vessel); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) (applying Florida's UCC to claim for breach of warranty on sportfishing boat).

[5] Many courts recognize that notice to the seller is sufficient to comply with the statute because "in most nationwide product distribution systems, the seller/representative dealer may be presumed to actually inform the manufacturer of any major product defects." *E.g., Cooley*, 813 P.2d at 741-42. Lazzara Yacht Corporation has not argued that notice was not provided to the seller, Lazzara International Yacht Sales.

8

remote but was "in effect a direct seller to the plaintiffs." *Id.* (citing *Carson v. Chevron Chem. Co.*, 6 Kan. App. 2d 776, 785, 635 P.2d 1248, 1256 (1981)). Lazzara Yacht Corporation has not argued that it was effectively the 'direct seller' of the GOLDEN LADY. Nor can that conclusion be drawn from the bare pleadings. Dismissal of Federal's state law claim in Count I for breach of Lazzara Yacht Corporation's express warranty is therefore not appropriate at the pleadings stage.

The Magnuson Moss Warranty Act provides a separate "statutory cause of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with [any obligation imposed by the Act] or under a written warranty, implied warranty or service contract.'" *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617-18 (11th Cir. 2001) (quoting 15 U.S.C. § 2310(d)(1)). Prior to the filing of an action for breach of warranty under Magnuson Moss, a defendant must be given a reasonable opportunity to cure any failure to comply with its warranty obligations. *See id.* at 618; 15 U.S.C. § 2310(e). Federal concedes that the second amended complaint fails to allege that Lazzara Yacht Corporation was provided a reasonable opportunity to cure. Federal has therefore failed to state a cause of action against Lazzara Yacht Corporation in Count II for breach of warranty pursuant to Magnuson Moss.

2. *Breach of Sea Fire's express warranty*

The owner's manual to the FM-200 fire suppression system contains a written warranty issued by Sea Fire. Federal contends that the FM-200 was defectively designed or manufactured in breach of the warranty, entitling it to damages under Magnuson Moss and Florida law. Sea Fire argues that Federal cannot pursue a claim for breach of express warranty in the absence of privity.

An action for breach of express warranty may be brought pursuant to Magnuson Moss, notwithstanding a lack of transactional privity. *See Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 n.4 (N.D. Fla. 2007). Magnuson Moss entitles three categories of consumers to enforce

9

a warranty:

> [1] a buyer (other than for purposes of resale) of any consumer product, [2] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and [3] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3). At a minimum, Federal alleged sufficient facts to demonstrate that the FM-200 was transferred to the vessel's owner during the warranty period, which qualifies the owner as a consumer within the second category. Accordingly, Federal is entitled to proceed against Sea Fire on its claim in Count IX for breach of express warranty pursuant to Magnuson Moss.

By contrast, a claim for breach of express warranty generally cannot be brought pursuant to Florida law in the absence of contractual privity. *See, e.g., Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990); *Yvon*, 495 F. Supp. 2d at 1184 (privity required for state law express warranty claim against yacht manufacturer); *T.W.M. v. American Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.").

Federal contends that Sea Fire's express warranty was intended for the benefit of the product's ultimate owner. Courts have relaxed the privity requirement where the express warranty was clearly intended to extend coverage to subsequent owners. *See Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 457-58 (Fla. 3d DCA 2005) (noting, "under Florida law, [plaintiff] was entitled to enforce the rights arising from the manufacturer's express warranty," despite the lack of privity, because the clear terms of the warranty extended to subsequent purchasers and the warranty rights had been assigned to plaintiff); *Fischetti v. American Isuzu Motors, Inc.*, 918 So. 2d 974, 976 (Fla. 4th DCA 2005) (rejecting argument that privity with manufacturer was required for common law

breach of warranty claim where warranty was clearly intended to extend to subsequent owners). Indeed, "[t]he manufacturer can hardly be heard to resurrect a common law requirement of privity when it has itself voluntarily provided a warranty that runs in favor of remote purchasers of its product." *Fischetti*, 918 So. 2d at 976.

Federal notes that the FM-200 owner's manual containing the express warranty is directed to "the system owner." (Second Am. Compl. Ex. E, Dkt. 33-5, p. 2). Further, Federal points to the purchase agreement which required Lazzara International Yacht Sales to supply a "[s]hip set of manufacturer's equipment manuals," including the FM-200 owner's manual. (Second Am. Compl. Ex. B, Dkt. 33-2, p. 15). *Cf. Mesa*, 904 So. 2d at 457 (lessor assigned rights to manufacturer's warranty to lessee by including in leasing agreement language that vehicle is subject to manufacturer's express warranty). At a minimum, there is facial plausibility to Federal's allegation that the manufacturer's warranty was intended to extend to subsequent users and was "passed through" to Venable. Federal's state law breach of express warranty claim against Sea Fire in Count VIII therefore alleges sufficient facts to withstand a motion to dismiss.

3. *Breach of implied warranty of merchantability*

Federal alleges that Lazzara Yacht Corporation and Lazzara International Yacht Sales breached implied warranties of merchantability. Lazzara Yacht Corporation argues that it was not provided with reasonable notice of the breach. As discussed, it cannot be determined from the bare pleadings whether Lazzara Yacht Corporation was entitled to notice under the statute.

Lazzara Yacht Corporation argues that it expressly disclaimed the implied warranty of merchantability in a manner which satisfies the requirements of Fla. Stat. § 672.316(2). Federal counters that an implied warranty disclaimer is unenforceable where an express warranty is given. Magnuson Moss provides:

11

> No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a).[6] "A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law." § 2308(c). Magnuson Moss therefore "supplement[s] state-law implied warranties" "by prohibiting their disclaimer in certain circumstances." *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001).

Because Lazzara Yacht Corporation issued an express warranty on the GOLDEN LADY, any attempted disclaimer of the implied warranty of merchantability is ineffective. § 2308; *see Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1293 (Fla. 1st DCA 1985) (implied warranty disclaimer ineffective where defendant entered into service contract with plaintiff); *Mesa*, 904 So. 2d at 458 (noting supplier cannot disclaim an implied warranty on a consumer product where the supplier makes any written warranty). Count III therefore states a cause of action against Lazzara Yacht Corporation for breach of the implied warranty of merchantability.[7]

*4.    Breach of implied warranty of fitness for a particular purpose*

Federal stipulates to the dismissal of its claim in Count IV for breach of the implied warranty of fitness for a particular purpose and does not request leave to amend. (Dkt. 41, pp. 7, 10).

---

[6] Magnuson Moss defines a "supplier" as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." § 2301(4). Lazzara Yacht Corporation manufactures yachts for sale to consumers and is therefore a supplier within the meaning of Magnuson Moss.

[7] Lazzara International Yacht Sales moved for dismissal of Count VII, which is Federal's claim for breach of the implied warranty of merchantability. However, the motion did not provide any argument in support of dismissing Count VII. The enforceability of Lazzara International Yacht Sales' warranty disclaimer is addressed below in the context of its motion to dismiss Federal's claim for breach of the implied warranty of workmanlike performance.

12

### 5. *Breach of implied warranty of workmanlike performance*

The warranty of workmanlike performance is an implied warranty imposed on a maritime service contractor which requires services to be performed with reasonable care, skill, and safety. *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 (11th Cir. 2003); *Coffman v. Hawkins & Hawkins Drilling Co., Inc.*, 594 F.2d 152, 154 (5th Cir. 1979) ("[I]ndependent shore-based contractors that go aboard a vessel by the owner's arrangement or by his consent to perform service for the ship's benefit impliedly warrant to the shipowner that they will accomplish their task in a workmanlike manner. The essence of the contractor's warranty of workmanlike performance is to perform its work properly and safely.") (quotation omitted).[8]

Lazzara Yacht Corporation and Lazzara International Yacht Sales argue that all implied warranties have been disclaimed. As discussed, because Lazzara Yacht Corporation supplied a written warranty on the yacht, its attempted disclaimer of any implied warranties is unenforceable. *See* 15 U.S.C. § 2308. By contrast, Lazzara International Yacht Sales did not issue a traditional written warranty on the GOLDEN LADY. Indeed, the purchase agreement stated that Lazzara International Yacht Sales "EXTENDS NO WARRANTIES OF ITS OWN AS TO THE YACHT, EXPRESS OR IMPLIED." (Second Am. Compl. Ex. A., Dkt. 33-1 ¶ 12) (emphasis in original).

Federal counters that the purchase agreement contained terms which constituted a "written warranty" within the meaning of Magnuson Moss. Federal relies on the second definition of "written warranty," which includes "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking."

---

[8] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

§ 2301(6)(B). Federal points to Lazzara International Yacht Sales' agreement to deliver the yacht by a date certain, to conduct dock and sea trials, and to execute documents to transfer title to the yacht.

Although the purchase agreement provided for a refund "[i]f LIYS fails to deliver the yacht as provided herein, or if LIYS otherwise defaults," (Dkt. 33-1 ¶ 15), the default term was not a promise to "refund, repair, replace, or take other remedial action . . . in the event that such product fails to meet the specifications set forth in the undertaking." *See* § 2301(6)(B).[9] Indeed, Federal has not identified any particular product specifications in the agreement. Accordingly, Lazzara International Yacht Sales gave no written warranty within the meaning of Magnuson Moss. Section 2308 therefore does not preclude enforcement of Lazzara International Yacht Sales' disclaimer. That disclaimer satisfies the requirements of Fla. Stat. § 672.316. Federal's claim in Count VI for breach of the implied warranty of workmanlike performance is therefore barred by Lazzara International Yacht Sales' warranty disclaimer.

Lazzara Yacht Corporation argues that the warranty of workmanlike performance is an admiralty doctrine which does not apply to the parties' non-maritime contract for the construction and sale of a vessel. *See, e.g., East River*, 476 U.S. at 872 n.7, 106 S. Ct. at 2303 n.7 ("Since contracts relating to the construction of or supply of materials to a ship are not within the admiralty jurisdiction, neither are warranty claims grounded in such contracts.") (internal quotation omitted). Federal does not disagree that the parties' contract is not a maritime contract. Instead, Federal responds that admiralty jurisdiction is premised on the failure of the fire suppression system to activate while the yacht was on navigable waters. Federal reasons that because admiralty jurisdiction

---

[9] By contrast, the contract obligated the manufacturer, Lazzara Yacht Corporation, to "repair any malfunctioning systems or equipment and correct any other defects." (Dkt. 33-1 ¶ 7).

14

exists over this action, the warranty of workmanlike performance should be imposed on the parties' non-maritime contract.

*Cooper* compels rejection of Federal's general premise. *See* 575 F.3d at 1161, 1166 (applying state law rather than admiralty law to claims related to contract for construction and sale of vessel, notwithstanding the existence of admiralty jurisdiction). Maritime law will not imply the warranty of workmanlike performance upon a contract for the sale or construction of a vessel. *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F. Supp. 920, 926 (E.D. La. 1977). Rather, "any warranty of workmanlike performance in those contracts must be implied by state, and not maritime, law." *Id.* Federal has not demonstrated that Florida law implies a warranty of workmanlike performance in contracts for the construction or sale of a vessel. Federal's claim in Count V for breach of the warranty of workmanlike performance is therefore dismissed without prejudice.

*Conclusion*

Accordingly, Flagship Fire's motion to dismiss (Dkt. 37) is **GRANTED**. The motions to dismiss of Defendants Lazzara Yacht Corporation and Lazzara International Yacht Sales (Dkt. 35) and Sea Fire Marine (Dkt. 39) are **GRANTED** *in part* and **DENIED** *in part*.

(1) Count II (violation of Magnuson Moss Warranty Act against LYC) and Count V (breach of implied warranty of workmanlike performance against LYC) of the second amended complaint are dismissed without prejudice.

(2) Count IV (breach of implied warranty of fitness for a particular purpose against LYC), Count VI (breach of implied warranty of workmanlike performance against LIYS), Count X (strict liability against all defendants), Count XI (negligence against Sea Fire), Count XII (negligence against LYC), and Count XIII (negligence against Flagship Fire) of the second amended complaint are dismissed with prejudice.

(3) Federal is granted leave to file a third amended complaint within **fifteen (15) days**.

(4) The motions to dismiss filed by Lazzara Yacht Corporation and Lazzara International Yacht Sales (Dkt. 35) and Sea Fire Marine (Dkt. 39) are denied in all other respects.

**DONE AND ORDERED** this 24th day of March, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record